

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/26/2013

| | | |
|---|---|---|
| IN RE: | § | |
| RANDI CHRISTINE MARTIN | § | CASE NO: 12-38024 |
| and | § | |
| LAWRENCE PING-CHUEN CHAN | § | |
|     Debtor(s) | § | |
| | § | CHAPTER 7 |

### MEMORANDUM OPINION

Trustmark National Bank's First Amended Motion to Dismiss pursuant to 11 U.S.C. § 707(b) (ECF No. 31) is denied.

### Procedural Background

On February 28, 2013, Trustmark filed its First Amended Motion of Trustmark National Bank to Dismiss Chapter 7 Case pursuant to 11 U.S.C. § 707(b). ECF No. 31. Randi Christine Martin and Lawrence Ping-Chuen Chan filed their Response in Opposition to Amended Motion of Trustmark Bank to Dismiss Case Under 11 U.S.C. § 707(b) on March 8, 2013. ECF No. 34. An evidentiary hearing was held on March 11, 2013. Mr. Reed Cook, Senior Credit Officer at Trustmark, Mr. Chan and Ms. Martin testified at the hearing. Trustmark's Exhibits 1 through 37 and Exhibit 43 were admitted into evidence. Chan and Martin's Exhibits C-01 through C-05, C-07 through C-16, C-18 through C-20 and C-22 through C-38 were admitted into evidence. Chan and Martin submitted their Post-Trial Brief on March 27, 2013. ECF No. 38. Trustmark submitted its Post-Trial Brief on April 8, 2013. ECF No. 40. Closing arguments were heard on April 10, 2013. Chan and Martin filed their Supplemental Post-Trial Brief on April 12, 2013. ECF No. 41. Trustmark filed its Supplemental Post-Trial Brief on April 19, 2013. ECF No. 42.

**Factual Background**

On November 1, 2012, Chan and Martin filed a voluntary Chapter 7 petition. ECF No. 1. Ms. Martin has been employed as a professor at Rice University since 1982. From sometime before 1999 until 2009, Mr. Chan owned Lawrence Chan Custom Builders, L.C. ("LCCB"). LCCB was a high-end custom home building company that mainly built and sold spec homes. Presently Mr. Chan is employed by Discovery Community of Houston—a halfway house of which he is the sole owner. Trustmark holds an unsecured claim against Chan and Martin's Estate in the amount of $834,977.93, resulting from post-foreclosure deficiency balances on two properties securing Chan and Martin's indebtedness to Trustmark.

**Cherokee Property**

In 2005 and 2006, Chan and Martin executed two Balloon Real Estate Lien Notes, borrowing a total of $2,400,000.00 from Trustmark (the "Cherokee Notes"). ECF No. 31 at 1. The Cherokee Notes were secured by real property at 5327 Cherokee Street, Houston, Texas (the "Cherokee Property"). ECF No. 31 at 1.

A Trustmark internal Loan Presentation Memorandum, presented to the Trustmark Loan Committee ("Cherokee Memo"), stated that the Cherokee Property would be Chan and Martin's primary residence upon completion. Trustmark Exhibit 17. The Cherokee Memo took into account the fact that Chan and Martin's current house, 5422 Pine Street, Bellaire, Texas was on the market for $1,200,000.00, with a loan balance of $800,000.00. Trustmark Exhibit 17. Upon sale, Chan and Martin were expected to apply the existing equity in their home on Pine Street, of approximately $400,000.00, to the Cherokee Property. Trustmark Exhibit 17.

On March 24, 2008, an Assumption Agreement was executed under which LCCB assumed responsibility for the Cherokee Notes. Exhibit C-32. Trustmark prepared an internal

document called an Amendment/Policy Exception Form prior to the execution of the Assumption Agreement.  Trustmark Exhibit 36.  The Amendment/Policy Exception Form stated that the reason for the Assumption Agreement was that Mr. Chan wanted to move the debt into his business due to the effect it was having on his personal credit.  Trustmark Exhibit 36.  Mr. Cook testified that Mr. Chan requested that the Cherokee Notes be transferred to LCCB because he was having difficulty obtaining long term mortgage financing on the Cherokee Property, and wanted to remove the Cherokee Notes from his personal credit.  Chan and Martin assert that the Assumption Agreement was executed in order to be able to sell the Cherokee Property as a new house with a warranty from LCCB, and that Trustmark was aware of this purpose for the Assumption Agreement.  ECF No. 34 at 3.  The Assumption Agreement contains a representation that the loan is not primarily for personal, family or household use.  Exhibit C-32.  Mr. Cook testified that this representation was necessary in order to allow LCCB to assume the loan.  The parties stipulated that although LCCB assumed the Cherokee Notes, title remained in the names of Chan and Martin, individually.  Mr. Chan testified that the mortgage interest deduction on Chan and Martin's personal income tax returns for years 2007 through 2009 included the interest paid on the Cherokee Notes.  Trustmark Exhibits 27-29.  Additionally, in 2009, Chan and Martin claimed the Cherokee Property as their homestead.  ECF No. 34 at 4.

On April 6, 2010, Trustmark foreclosed on the Cherokee Property and purchased the property at the foreclosure sale for $2,300,000.00.  Exhibit C-35.  A deficiency balance remained.

**Swashbuckle Property**

In 2007, LCCB executed two Balloon Real Estate Lien Notes, borrowing a total of $1,233,000.00. from Trustmark (the "Swashbuckle Notes").  ECF No. 31 at 2.  The Swashbuckle

Notes were secured by real property at 4223 Swashbuckle, Galveston, Texas ("Swashbuckle Property"). Chan and Martin subsequently executed guaranty agreements for joint and several liability for the Swashbuckle Notes. Trustmark asserts that during the loan process, Chan and Martin represented that the Swashbuckle Property would serve as their vacation home. ECF No. 31 at 2. Mr. Chan testified that he represented to Trustmark that the majority of the time, the Swashbuckle Property would be used as a rental property.

A Trustmark internal Loan Presentation Memorandum (the "Swashbuckle Memo") stated that the Swashbuckle Property would be used for Chan and Martin's second home and a rental house. Trustmark Exhibit 16. The Swashbuckle Memo also stated that the primary source of repayment would be from the permanent mortgage once the home was complete. Trustmark Exhibit 16. The ultimate source of repayment would be Chan and Martin's personal cash and cash flow from rental income. Trustmark Exhibit 16. The Swashbuckle Memo evaluated the weekly rental rates for comparable homes. Trustmark Exhibit 16. It forecast that with the house Mr. Chan planned to build, he could expect rental income of $90,000.00 to $120,000.00 per year, net of commissions. Trustmark Exhibit 16. The Swashbuckle Memo concluded that the projected rental income would cover most of the house payment, with Mr. Chan responsible for the taxes and insurance. Trustmark Exhibit 16.

LCCB began construction on the Swashbuckle Property in the summer of 2008. ECF No. 34 at 4. When Hurricane Ike hit in September, 2008, it destroyed the entire structure and put about half of the lot permanently underwater. ECF No. 34 at 4. The City of Galveston shut down all building projects and Trustmark terminated further advances on the project. ECF No. 34 at 4. LCCB ceased payments to Trustmark in 2009. ECF No. 34 at 4.

On November 3, 2009, Trustmark foreclosed on the Cherokee Property and purchased the property at the foreclosure sale for $275,000.00.  Exhibit C-27.  A deficiency balance remained.

On August 16, 2012, the deficiency amounts owed to Trustmark by Chan and Martin on the Cherokee and Swashbuckle Properties were reduced to judgment in *Trustmark National Bank v. Lawrence Ping-Chuen Chan and Randi Christine Martin*, Cause No. 2011-43082, in the 164th Judicial District Court of Harris County.  ECF No. 31 at 2.  Pursuant to the Final Summary Judgment, Chan and Martin owed Trustmark $834,977.93 plus post-judgment interest for the deficiencies on the Cherokee and Swashbuckle Properties (the "Trustmark Debt").  Trustmark Exhibit 9.  The Final Summary Judgment does not allocate the deficiency between the two properties.

### Prior Bankruptcies

On June 29, 2009, LCCB filed a voluntary Chapter 7 petition (Case No. 09-34471).  A Final Decree was issued on May 9, 2011 (Case No. 09-34471, ECF No. 38), and LCCB was fully liquidated.  Chan and Martin filed an individual Chapter 11 on October 2, 2009 (Case No. 09-37313).  On December 4, 2009, Chan and Martin's individual Chapter 11 was dismissed on their own motion.  *See* Case No. 09-37313, ECF Nos. 31 & 33.

### Present Bankruptcy

Chan and Martin filed this case on November 1, 2012.  They assert that the filing was precipitated by the Final Summary Judgment obtained by Trustmark for the deficiencies on the Cherokee and Swashbuckle Properties.  The petition stated that the nature of Chan and Martin's debts are primarily consumer in nature, as defined in 11 U.S.C. § 101(8).  ECF No. 31 at 3.  Chan and Martin assert that listing their debts as primarily consumer debts was merely an oversight.  On December 11, 2012, Chan and Martin filed a Chapter 7 Statement of Current

Monthly Income and Means-Test Calculation ("Form B22A"), which declared that their debts are primarily non-consumer debts. ECF No. 31 at 3. At the § 341 Meeting of Creditors held on December 11, 2012, Mr. Chan testified that their debts are primarily business debts. ECF No. 31 at 3.

On February 14, 2013, Chan and Martin filed an Amended Schedule F in order to list additional unsecured claims. Chan and Martin listed First National Bank, Preferred Bank and Select Portfolio Servicing as unsecured non-priority creditors holding claims related to post-foreclosure deficiency balances totaling $1,204,246.00. ECF No. 31 at 8-9. It is undisputed that these are non-consumer claims. The foreclosures on these properties occurred in 2009 and 2010. *See* Exhibits C-11, C-13 & Trustmark Exhibit 43. To date, no action has been taken against Chan and Martin to collect these deficiencies.

Chan and Martin also added $375,139.99 related to five credit card accounts. ECF No. 31 at 8. Chan and Martin testified that all five of these cards were used for both business and personal use. ECF No. 31 at 9. Chan and Martin testified that all of the credit card debt listed in their Amended Schedule F in the current case was incurred prior to the bankruptcy filings in 2009. However, none of these credit cards were listed on LCCB's Amended Schedule F in Case No. 09-34471 (ECF No. 22). Chan and Martin were unable to produce any documentation to show the allocation between consumer and business purchases on these five credit cards. ECF No. 31 at 8-9.

**Analysis**

11 U.S.C. § 707(b) provides that after notice and a hearing, the court may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with debtor's consent convert such a case to one under chapter 11 or 13, if it finds that granting

relief would be an abuse of the provisions of this chapter.  The moving party bears the burden of proving that the case involves primarily consumer debts, and that relief under chapter 7 would be an abuse of the provisions of chapter 7.  *In re Reavis*, 2007 WL 2219519, at *5 (Bankr. N.D. Okla July 30, 2007).

11 U.S.C. § 101(8) defines consumer debt as debt incurred by an individual primarily for a personal, family or household purpose.  The Bankruptcy Code does not define the term "primarily."  The Fifth Circuit in *In re Booth*, held that primarily suggests an overall ratio of consumer to non-consumer debts of greater than fifty percent.  *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988).  The *Booth* court also held that courts should evaluate not only the dollar amount, but also the relative number of consumer versus non-consumer debts.[1]  *Id.*

### Texas Property Code § 51.003—Statute of Limitations or Statute of Repose

Trustmark argues that the three deficiency balances on the Friar Tuck, Fieldwood, and North Boulevard properties should not be considered in the calculation of whether Chan and Martin's debt is primarily consumer.  The Court agrees.

Texas Property Code § 51.003(a) provides that if a deficiency results after a foreclosure sale, any action brought to recover the deficiency must be brought within two years of the foreclosure sale.  At least one Texas state case has characterized § 51.003 as a statute of repose.  *See Grizle v. Carey*, 1999 WL 34973513, at *1 n. 2 (Tex. App.—Corpus Christi Feb. 4, 1999) (not designated for publication).  At least one other court however held § 51.003 to be a statute of limitations.  *Trunkhill Capital, Inc. v. Jansma, et al.*, 905 S.W.2d 464 (Tex. App.—Waco 1995).

---

[1] The Court need not address this second *Booth* factor, the relative number of consumer versus non-consumer debts, because as discussed *infra*, Trustmark did not show that greater than fifty percent of Chan and Martin's debt is consumer debt.

Statutes of repose differ from statutes of limitations because they potentially cut off a cause of action before it accrues. *Id*. at 467. A statute of repose begins to run from a specified date, irrespective of whether or not a cause of action has actually accrued. *Id*. Under a statute of repose, a party cannot possess a cause of action if it did not arise within the given time period. *Id*. A statute of limitations is procedural however, and compels a party who possesses a cause of action to bring the cause of action within the limitations period. *Id*.

The *Trunkhill Capital* court reasoned that because the cause of action for a deficiency comes into existence on the date of foreclosure, and the limitations period begins to run from that date, the legislature could have only intended for § 51.003 to be a statute of limitations. *Trunkhill Capital, Inc.*, 905, S.W.2d at 467. The Court agrees with this analysis. The date of foreclosure is not an independent date, but is rather the date on which a cause of action for a deficiency balance accrues. Section 51.003(a) will be treated as a statute of limitations.

The two-year statute of limitations has run on the deficiency claims for all three of the foreclosed properties added to Chan and Martin's Amended Schedule F. Chan and Martin filed an individual Chapter 11 on October 2, 2009 (Case No. 09-37313). The case was dismissed on December 4, 2009. During the sixty-three day pendency of Case No. 09-37313, the statute of limitations was tolled. *See, e.g., Cade v. Stone, et al.*, 2013 WL 3009853, at *5 (Tex. App.—Corpus Christi June 13, 2013) (when automatic stay prohibits claimant from bringing suit, the statute of limitations is tolled until the stay is lifted). The following chart provides when the statute of limitations ran for each claim, including any tolling during Case No. 09-37313:

| Property | Lender | Date of Foreclosure | Statute of limitations expires | Tolling during Case No. 09-37313 | New expiration of statute of limitations |
|---|---|---|---|---|---|
| Friar Tuck | First Nat'l Bank | 06/02/2009 | 06/02/2011 | 63 days | 08/04/2011 |
| Fieldwood | Select Portfolio Servicing | 08/04/2009 | 08/04/2011 | 63 days | 10/06/2011 |
| North Blvd | Preferred Bank | 01/19/2010 | 01/19/2012 | 63 days | 03/22/2012 |

The statute of limitations has run for bringing a cause of action for the deficiency balance on each of the three properties. Section 51.003 protects both borrowers and guarantors in post-foreclosure deficiency suits—therefore Chan and Martin are protected by the two-year statute of limitations in § 51.003. *See, e.g., Interstate 35/ Chisam Road, L.P, et al. v. Moayedi*, 377 S.W.3d 791, 797 (Tex. App.—Dallas 2012) (section 51.003 was designed to protect borrowers and guarantors in deficiency suits resulting from non-judicial foreclosure sales).

Chan and Martin assert that the guaranties signed for each of these properties waived the protections of § 51.003 as to Chan and Martin. ECF No. 38 at 11. Mr. Chan testified that the guaranty signed with First National Bank and other lenders was neither negotiated nor restricted, however he did not specifically testify that the guaranty agreements waived the protections of § 51.003. Copies of the guaranties are not in evidence. The lack of evidence regarding whether Chan and Martin, in fact, waived the protections of § 51.003 must be construed in favor of Trustmark. *See, e.g., City of El Paso, Tex. v. El Paso Entm't, Inc.*, 382 F. Appx. 361, 366 (5th Cir. 2010) citing *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964) (burden on respondents to prove essential elements of an affirmative defense). For the purposes of this motion, the statute of limitations is deemed to have run for all three properties against Chan and Martin as guarantors.

Although the statute of limitations has run, the deficiency balances may still be considered claims against Chan and Martin's Estate. *See, e.g., Claudio v. LVNV Funding, LLC (In re Claudio)*, 463 B.R. 190, 194 (Bankr. D. Mass. 2012) (proof of claim on a stale claim will be deemed allowed under § 501(a) unless affirmative defense raised in a filed objection).

No proof of claim has been filed by any of the creditors holding the deficiency claims, and no efforts to collect on these deficiencies have been made. Chan and Martin have a valid affirmative defense to any potential claim for these debts. Allowing Chan and Martin to include debts for which they have affirmative defenses is counter to the purpose of § 707(b) because these debts are not what precipitated the filing of the bankruptcy. It would be inequitable, in making a determination of whether a filing was abusive, to consider debts that the Court determines were added solely for the purpose of tipping the scale in Chan and Martin's favor. Although the deficiency balances may be considered claims against the Estate, the Court will not consider them as part of the determination of whether Chan and Martin's debts are primarily consumer debts.

**Trustmark Debts**

Without considering the claims for the three deficiencies, the Trustmark Debt comprises over fifty percent of Chan and Martin's debts. If both the Cherokee Notes and Swashbuckle Notes were consumer in nature, it would be clear that Chan and Martin's debts are primarily consumer debts. However, the Court finds that the indebtedness on the Cherokee Property is a consumer debt, and that the indebtedness on the Swashbuckle Property is a non-consumer debt.

There is no evidence on how to allocate the deficiency judgment between the two Properties. Without an allocation, Trustmark has failed to show that greater than fifty percent of

Chan and Martin's debt is consumer debt. Accordingly, Trustmark has not met its burden of proving that the case should be dismissed.

The test for determining whether a debt should be classified as a business debt, rather than as a consumer debt, is whether it was incurred with an eye toward profit. *In re Booth*, 858 F.2d at 1055. To make such a determination it is necessary to look at the transaction as a whole and determine the purpose for which the credit was extended. *Riviere, et al. v. Banner Chevrolet, Inc., et al.*, 184 F.3d 457, 462 (5th Cir. 1999). Courts must look at the substance of the transaction and the borrower's purpose in obtaining the loan, rather than merely looking at the form of the transaction. *Id.* A court's analysis should focus on the primary purpose for which the debt was incurred and should not take into consideration a subsequent re-characterization of the debt. *See Cox v. Fokkena (In re Cox)*, 315 B.R. 850, 855 (8th Cir. B.A.P. 2004) (court must examine debtor's primary purpose in incurring the debt to determine whether it is a consumer debt); *see also In re Bertolami*, 235 B.R. 493, (Bankr. S.D. Fla. 1999) (fact that debtors no longer reside at subject property and no longer claim it as homestead does not change purpose for which debt *incurred*) (emphasis in original).

**Cherokee Property**

The Cherokee Notes were incurred primarily for a consumer purpose. The Cherokee Memo provided that the Cherokee Property would be Chan and Martin's primary residence upon completion. The Cherokee Memo took into account the fact that Chan and Martin's current house, on Pine Street was on the market for $1,200,000.00, with a loan balance of $800,000.00. Upon sale, Chan and Martin would apply the existing equity from Pine Street, of approximately $400,000.00, to the Cherokee Property.

There is disagreement about why LCCB subsequently assumed the Cherokee Notes. Trustmark asserts that the Assumption Agreement was executed to help improve Mr. Chan's personal credit in order for him to obtain long-term financing for the Cherokee Property. Mr. Chan asserts that the purpose of the Assumption Agreement was so that the Cherokee Property could be sold as a new home with a warranty from LCCB.

Trustmark points to the fact that in 2009, Chan and Martin moved into the Cherokee Property and claimed it as their homestead, as further evidence that it is a consumer debt. Trustmark also points to the fact that Chan and Martin took a mortgage interest deduction for the Cherokee Property on their personal income taxes for 2007 through 2009.

Based on the case law, the Court need not weigh the differing testimony from the parties, or consider the Trustmark evidence which proves that the property was, at some point, Chan and Martin's personal residence. The Court need only look at the purpose for which the debt was incurred. When looking at the transaction as a whole, the debt was incurred for personal, family or household use, and is a consumer debt.

**Swashbuckle Property**

The Court conducts the same analysis with the Swashbuckle Property—looking at the purpose for which the debt was incurred. The debt was incurred with an eye toward profit.

The parties again disagree about the characterization of the debt. Trustmark asserts that Chan and Martin represented that the Swashbuckle Property would be their vacation home, while Chan and Martin assert that the Swashbuckle Property would primarily be a rental property that they could occasionally use for vacation. The Swashbuckle Property was intended to be, in part, a vacation home for Chan and Martin. The Swashbuckle Memo provides that it would be a vacation home. There is also an email from Mr. Chan indicating that Ms. Martin wanted a beach

house in Galveston. Trustmark Exhibit 22. Nevertheless, the property was also intended as a rental property. Taking the evidence as a whole, the debt was incurred with an eye toward profit. The Swashbuckle Memo provides that with the house Mr. Chan planned to build, he could expect rental income of $90,000.00 to $120,000.00 per year, net of commissions. The projected rental income would cover most of the house payment, with Mr. Chan responsible for the taxes and insurance. The loan was made under the premise that almost the entire mortgage would be covered through rental income. The Swashbuckle debt was incurred with an eye toward profit.

While one of the loan transactions underlying the Trustmark Debt was a consumer transaction, Trustmark has not introduced evidence allocating the Deficiency Judgment between the two Properties. Without evidence on how to allocate the Deficiency Judgment, Trustmark failed to prove that greater than fifty percent of Chan and Martin's debt is consumer debt.

## Conclusion

The Court will enter an order consistent with this Memorandum Opinion.

SIGNED **September 25, 2013.**

　　　　　　　　　　　　　　　　　　　　　　　　　Marvin Isgur
　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE